**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH HEIM,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-10-1656** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **DAUPHIN COUNTY PRISON,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

## I.    Introduction

Plaintiff, Joseph Heim, a prisoner formerly housed at the Dauphin County Prison (DCP), in Harrisburg, Pennsylvania, seeks to hold the named defendants liable for violating his constitutional rights when they illegally charged him room and board fees pursuant to the DCP's Financial Responsibility program.  (Doc. 1, Compl.)  As relief, Mr. Heim seeks reimbursement of all unauthorized funds deducted from his inmate account as well as the expungement of the entire debt imposed by DCP.  *Id*.  Named as defendants are the following Dauphin County employees/entities: the DCP; Warden DeRose; Deputy Warden Nichols; Deputy Warden Carroll; the Prison Board of Inspectors; the DCP Business Office; and Freddie McNeal.  *Id*.

Presently before the Court is the Dauphin County defendants' Motion to Dismiss.  (Doc. 28).  For the reasons that follow, it shall be granted in part and denied in part.

**II.      Standard of Review for Motions to Dismiss**

On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* ___ U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Pro se pleadings are held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). Pro se litigants are to be granted leave to file a curative amended complaint "even when a plaintiff does not seek leave to amend," unless such an amendment would be inequitable or futile.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

## III.    Background

During April 2010, Mr. Heim was recommitted to the DCP by his parole officer.[1]  (Doc. 1, Compl. at CM/ECF p. 8.)[2]  During the intake process, his cellphone and a $30.00 check were confiscated.  (*Id.* at p. 9.)  The intake officer gave Plaintiff's cellphone to Mr. Heim's parole officer, but refused to turn over the $30.00 check to the parole officer as Plaintiff requested because Plaintiff "may owe [the prison] money".  (*Id.*)

The following excerpt is found in the DCP inmate handbook.

> ### VI.    FEES FOR SERVICE/FINANCIAL RESPONSIBILITY
>
> The Dauphin County Prison Board of Inspectors has approved a policy for Financial Responsibility, under which fees are charged to inmates for Room & Board, certain Medical services and medications, and other services.  The Financial Responsibility Policy also includes funds to be deducted from an inmate's account as restitution for damage, defacing, or destruction of Dauphin County Prison property.  General information and current fees for various services are listed below. Fees for service are subject to change; any changes will be posted.
>
> #### A.    ROOM AND BOARD
>
> At the time of release, Room and Board will be assessed on all sentenced inmates incarcerated at Dauphin County Prison.  For purposes of Room and Board charges, a County or State parole violation is considered

---

[1]  The Complaint does not specify when Mr. Heim was initially committed to the DCP.

[2]  Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

a sentence.  Also, sentenced inmates from other counties that have been transferred to DCP will be assessed Room and Board charges.  The inmate will be billed $10.00 for each day spent in the institution, beginning with the date on which the inmate was sentenced.  The per diem rate will be increased by $5.00 for each commitment period after the first commitment.

Inmate workers who appear on the work detail list (i.e. work 5 days a week, 8 hours a day) will receive credit towards their room and board.  Any inmate wishing to voluntarily begin paying room and board costs during incarceration will be offered the opportunity to establish a payment plan.  Payment plans must equal at least 50% of incoming funds.  No payment plan may be set up without the approval of the Business Office; such an agreement must stipulate the amount to be paid on a monthly basis.  All payment plans are void upon recommitment.

Delinquent accounts will be turned over to a collection agency.  Balances not satisfied through a collection agency will be recorded on an inmate's permanent record.  An inmate who has previously been incarcerated in Dauphin County Prison, was released with an outstanding balance, and is committed again to DCP, will be required to pay any outstanding balance on record. Therefore, at the time of recommitment, inmates will be assessed 100% of any money in their possession. Thereafter, when money is received at the Prison for an inmate after recommitment, 50% is applied to the negative balance and 50% is placed into his/her Commissary account for use by the inmate.

(Doc. 1-2, *Inmate Handbook* at pp. 38 - 39):

The DCP Inmate Handbook also contains a Grievance policy which allows any DCP inmate to file a administrative complaint "about the behavior or action toward an inmate by a staff member or another inmate, or any matter of concern, including conditions of confinement."  (*Id.* at p. 47.)

-4-

Mr. Heim alleges that DCP's Financial Responsibility Policy violates his 1st, 8th, and 14th Amendment rights as he never agreed or consented to participate in the Financial Responsibility program.  (Doc. 1 at pp. 6 -7.)  Plaintiff claims DCP officials lack the authority to impose such fees and that he received no notice of the program or opportunity to challenge the indebtedness prior to his funds being confiscated.  (*Id.*)  Finally, he claims he is being treated unfairly as it costs no more to house him, a recommitted inmate, than to house an inmate committed for the first time to the DCP.  Plaintiff argues that the increased Room and Board per diem fee based on the number of one's commitments to the DCP is discriminatory, punitive and illegal.  (*Id.* at p. 10.)

## IV.   Discussion

### A.   First Amendment Claim

The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend I.

The Court is at a loss as to how Plaintiff maintains that the collection of per diem fees violates the First Amendment, and Plaintiff has not explained the legal basis of this claim.  Furthermore, as Plaintiff fails to provide any  factual allegations from which a court may plausibly infer a First Amendment cause of action, this claim will be dismissed.  See *Zurawski v. Southeastern Pennsylvania Transp. Authority,* *No. 10-3062, 2011 WL 3418367, *1 (3d Cir. Aug. 5, 2011)*(citing *Ashcroft*, ____ U.S.

at ___, 129 S.Ct. at 1949).

**B.      Fourth Amendment Deprivation of Property[3]**

To the extent Joseph Heim alleges his cell phone was confiscated in violation of the Fourth Amendment, this claim will be dismissed.  There is no doubt that the protections of the Fourth Amendment with respect to seizures of a prisoner's "effects" or property do not apply in the prison context.  *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration.")  "The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984).  Once committed to DCP, Mr. Heim did not have a protected liberty interest in not being searched and having his cell phone, which is contraband within the facility, confiscated. Accordingly, the Fourth Amendment claim, insofar as it concerns Plaintiff's cell phone, is dismissed for failure to state a claim upon which relief can be granted.

**C.      Eighth Amendment Excessive Fine Claim**

Per the Financial Responsibility Policy, upon Joseph Heim's recommitment to the DCP, 100% of the money in his possession, $30, was seized to pay for the outstanding Room and Board fees balance accrued during first DCP commitment.

---

[3]  Defendants did not address Mr. Heim's Fourth Amendment claim.  Nonetheless, as Mr. Heim is proceeding *in forma pauperis*, the court maintains the authority pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2) to dismiss a complaint "at any time". Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the Prison Litigation Reform Act.

Additionally, he was subject to an increased Room and Board fees of $15 per day due to his new recommitment.  Joseph Heim argues the imposition of the Room and Board fee itself, as well as the increased rate due to his recommittment, violate his Eighth Amendment rights.

The Eighth Amendment states that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amen. VIII; *see also Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417 n.7 (3d Cir. 2000).  The Eighth Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]' " *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)).  The prohibition on excessive fines "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314 (1998)(citing *Austin v. United States*, 509 U.S. 602, 609-610, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488 (1993)). In order to demonstrate that the charges imposed upon him were "excessive fines," Plaintiff would have to allege that the charges imposed upon him were fines, and that such fines were excessive.

Faced with a similar policy charging inmates a flat per diem rates, the Third Circuit Court of Appeals found such fees did not *per se* violate the Eighth Amendment.  *See Tillman, supra.*  In *Tillman*, an inmate challenged a $10 per diem housing fee assessed inmates at the Lebanon County Prison.  *Tillman*, 221 F.3d at 413.  Relying on case law of the United States Supreme Court and the Third Circuit Court of Appeals, the Court held that as long as the provision of a humane environment, adequate food, clothing and shelter, medical care and the reasonable measures to guarantee an inmate's safety were not contingent on an inmate's ability to pay for these services, it was permissible for prison authorities to "seek reimbursement from the party receiving the benefit of  [this] care."  *Id*. at 418-419; *see also Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir. 1997).

Addressing Tillman's excessive fines claim, the Court found the $10 a day charged by the Cost Recovery Program did not amount to an excessive fine as it was part of a rehabilitation and responsibility program.  *Id*. at 120.  However, the Court found that "[i]f the assessments and confiscations under the Cost Recovery Program 'can only be explained as serving in part to punish,' they are 'punishment' for purposes of the Excessive Fines Clause, even if they may also be understood to serve remedial purposes."  *Tillman*, 221 F.3d at 420 (quoting *Austin*, 509 U.S. at 610, 620-21, 113 S.Ct. at 2805-06, 2811-12).  In this case, the rationale for the imposition of the Room and Board fee is not on the record.  Additionally, the Inmate Handbook attached to the Complaint reveals that the Room and Board fees charged inmates at the DCP are not uniform.  The per diem rate varies depending on the

individual inmate's number of commitments to the DCP.  Based on the Complaint alone, this Court cannot determine the DCP's intent for enacting the Room and Board fee, or whether the sliding scale of fees charged for room and board are meant to punish Plaintiff for his repeat incarcerations to the facility or whether they serve some rehabilitative purpose.  For these reasons, Defendants' motion to dismiss Joseph Heim's Eighth Amendment Excessive Fines claim will be denied.

### D.      Fourteenth Amendment Claim

Joseph Heim maintains that he was entitled to notice and a hearing before the DCP assessed him room and board fees pursuant to the Financial Responsibility Policy, or deducted funds from his prison account without his authorization to satisfy these debts.

The Fourteenth Amendment forbids state actors from depriving persons of life, liberty or property without due process of law.  U.S. Const. amend. XIV, § 1; *see also Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).  To state a claim for due process, an inmate must allege "(1) that the state deprived him of a protected interest in life, liberty, or property and (2) the deprivation occurred without due process of law." *Burns v. PA Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008).  The Third Circuit Court of Appeals has recognized that inmates have a property interest in funds held in their prison accounts.  *Id.* at 286 (citing *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)).  Thus, they are entitled to due process when prison authorities place an encumbrance on the inmate's account, even though no deduction or seizure has yet taken place.  *Id.* at 291.  "In procedural due process

claims, the deprivation by state action of a constitutionally protected interest in 'life,

or property' is not itself unconstitutional; what is unconstitutional is the deprivation of

such an interest without due process of law."  *Zinermon v. Burch*, 494 U.S. 113, 125,

110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990).  Here, there is no question that Mr.

Heim has properly alleged the first prong of this due process analysis, and thus the

only question presented is whether his prison account was assessed without

adequate procedural safeguards.  *See McKeithan v. Beard*, 322 F. App'x 194, 198

(3d Cir. 2009).

        In determining what due process is required, the Court is mindful that "not all

situations calling for procedural safeguards call for the same kind of procedure."

*Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484

(1972).  The Supreme Court of the United States has explained that "due process,

unlike some legal rules, is not a technical conception with a fixed content unrelated

to time, place and circumstances"; rather, it is "flexible and calls for such procedural

protections as the particular situation demands."  *Mathews v. Eldridge*, 424 U.S.

319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976) (internal citations and

quotation marks omitted).  Identifying what process is due "generally requires

consideration of three distinct factors":

> First, the private interest that will be affected by the official
> action; second, the risk of an erroneous deprivation of such
> interest through the procedures used, and the probable
> value, if any, of additional or substitute procedural
> safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and
> administrative burdens that the additional or substitute
> procedural requirement would entail.

*Id.* at 335.

It is well established that random and unauthorized deprivations of property by state officials do not violate the federal constitution if an adequate post-deprivation state remedy exists. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in party by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Burns*, 642 F.3d at 172.  However, where the deprivation takes place pursuant to a prison policy, the balancing test announced in *Mathews* must be examined to determine if a pre-deprivation hearing is necessary under the Fourteenth Amendment.

Applying this standard to cases impacting an inmate's property interest in his prison account with respect to non-disciplinary sanctions, the United States Court of Appeals for the Third Circuit has considered the requisite level of procedural due process necessary for the collection of prisoner room and board fees and concluded that it is impractical to expect prisons to provide pre-deprivation proceedings in this situation "even when the inmate refuses to grant authorization". *Tillman*, 221 F.3d at 421 n.12 421-422.  To require a pre-deprivation hearing before the collection of outstanding fees (of which the inmate has prior notice) would be impractical, significantly increase transaction costs, and hinder the prison's ability to reduce their costs of incarceration. *Id*. at 422.  The Third Circuit Court of Appeals has found the assessment of such fees "routine matters of accounting, with a low risk of error." *Id*. Any assessment errors "may be corrected through the prison's grievance program without any burden on the prisoner's rights." *Id*. at 422.  Furthermore, *Tillman* held that due process is fully satisfied where post-deprivation procedures are available

through the normal prison grievance system.  *Id.*

Here, Joseph Heim challenges a room and board policy very similar to that in *Tillman*.  It is clear from the documents attached to the Complaint that Plaintiff had notice of both the Room and Board fee and grievance policy upon his admission to the DCP via the Inmate Handbook.  *See* Doc. 1-2.  The grievance policy is similar to others reviewed by the Third Circuit Court of Appeals and provides a sufficient post deprivation remedy.  *Id.; Tillman*, 221 F.3d at 410.  The DCP grievance policy allows inmates the opportunity to challenge "any matter of concern" related to their incarceration, including the Room and Board assessment or deductions from their prison account.  Doc. 1-2 at p. 47.  Thus, where as here, the correctional facility routinely collects or assesses fees, or otherwise performs ministerial accounting tasks, procedural due process is satisfied by the availability of a post-deprivation proceeding, namely, the normal prison grievance process.  *Tillman,* 221 F.3d at 422. Therefore, Plaintiff's due process claim will be dismissed for failure to state a claim on which relief can be granted.

**E.     Equal Protection Claim**

Plaintiff alleges that charging inmates different per diem rates based on their number of commitments to the DCP, defendants denied him equal protection.  Doc. 1, Compl.  Essentially, he is alleging the defendants have created an unconstitutional distinction within the class of inmates housed at DCP.  Defendants do not specifically address Plaintiff's claim so the Court reviews the complaint *sua sponte* to ensure that it states a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff does not allege any differential treatment by

defendants and he therefore fails to plead the material elements of an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be treated alike.  *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Millard v. Hufford*, 415 F. App'x 348, 349 (3d Cir. 2011).  A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him.  *See McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987). Accordingly, to state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that:  (1) he was a member of a protected class; (2) he was treated differently from similarly situated persons outside of his protected class; and (3) the discrimination was purposeful or intentional rather than incidental.  *See Chambers v. Sch. Dist. of Phila. Bd. of Educ.,* 587 F.3d 176, 196 (3d Cir. 2009); *see also Tillman,* 221 F.3d at 423–24.

Joseph Heim's complaint fails to state an equal protection claim.  First, neither prisoners nor indigents constitute a suspect class.  *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001).  Thus, Plaintiff has failed to show that he is a member of a suspect class.  Next, he fails to show that he has been treated differently from other DCP inmates who are recommitted to the DCP, i.e. that they too were not charged an increased per diem rate based on their number of commitments to the facility.  Therefore, Mr. Heim has failed to allege any facts that

would support the basic elements of an equal protection claim.  His assertion of an equal protection violation is no more than conclusory and should be denied.

### F.    Municipal Liability

Mr. Heim alleges that his various constitutional rights were violated as a result of the implementation and enforcement of a Dauphin County policy.  Specifically, the Room and Board fee was enacted by the DCP Board of Inspectors via its Financial Responsibility Policy.  Doc. 1-2 at p. 38.  Although not specifically identified as a municipal liability claim, based on the allegations of the Complaint, clearly this *pro se* plaintiff is asserting such a claim.  Defendants do not address this claim in their motion to dismiss.

Municipalities and other government bodies may be sued under Section 1983.  *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658, 690-92, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978).  In order to state a legally sufficient claim for municipal liability under Section 1983, a plaintiff must plead the existence of a municipal policy or custom, and that said policy or custom caused the alleged constitutional violation.  *Id.* at 694, 98 S.Ct. at 2037-38; *see also McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009).  Liability may not be imposed solely on a *respondeat superior* theory.  *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.  Section 1983 only "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights."  *Id.* at 692, 98 S.Ct. at 2036.  Thus, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. "  *Id.* at 694, 98 S.Ct. at 2038.

Where, as here, Plaintiff alleges that a flawed policy inflicted constitutional

injuries, he has sufficiently asserted a claim of municipal liability against the Dauphin County Prison and Prison Board of Inspectors as they approved the Financial Responsibility Policy which authorized the assessment and collection of Room and Board fees.  *See* Doc. 1-2 at p. 38.  At this stage of the proceedings, there is inadequate information in the record to make a determination as to whether any of the individual defendants (DeRose, Nichols, Carroll and McNeal) are members of the Prison Board of Inspectors.  Thus, defendants' motion to dismiss the individual defendants based on their alleged lack of personal involvement will be denied.

The Court will issue an appropriate order.


**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**
**Date: August 31, 2011**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOSEPH HEIM,                              :
                                          :
    **Plaintiff**                        :
                                          :     **CIVIL NO. 3:CV-10-1656**
   **v.**                                :
                                          :     **(Judge Caputo)**
DAUPHIN COUNTY PRISON, *et al.*,          :
                                          :
    **Defendants**                      :

**O R D E R**

**AND NOW**, this **31st** day of **AUGUST, 2011**, it is ordered that:

   1.  Defendants' Motion to Dismiss (doc. 28) is granted in part and denied in part.

   2.  Joseph Heims' First and Fourth Amendment claims against the named defendants is dismissed for failure to state a claim upon which relief can be granted.

   3.  Defendants' Motion to Dismiss Plaintiff's Eighth Amendment Excessive Fines claim is denied.

   4.  Defendants' Motion to Dismiss the Dauphin County Prison, the Prison Board of Inspectors and the Business Office is denied.

   5.  Defendants' Motion to Dismiss DeRose, Nichols, Carroll and McNeal based on their alleged lack of personal involvement is denied.

   6.  Defendants are granted twenty-one (21) days from the date of this Order to file an Answer to the Complaint.

                                   **/s/ A. Richard Caputo**
                                   **A. RICHARD CAPUTO**
                                   **United States District Judge**