# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH HEIM, | : |
| Plaintiff | : |
| | : CIVIL NO. 3:CV-10-1656 |
| v. | : |
| | : (Judge Caputo) |
| DAUPHIN COUNTY PRISON, *et al.*, | : |
| Defendants | : |

# M E M O R A N D U M

## I. Introduction

Joseph Heim, an individual formerly incarcerated at the Dauphin County Prison (DCP), in Harrisburg, Pennsylvania,[1] initiated this civil rights Complaint on August 10, 2010, alleging that his constitutional rights were violated when money in his possession upon his readmission to the prison was confiscated and applied towards his pre-existing debt for room and board at the DCP. (Doc. 1, Compl.) As relief, Mr. Heim seeks reimbursement of all funds illegally confiscated as well as the expungement of his entire "room and board" debt incurred asa result of his various commitments to the DCP. (*Id*.)

On August 31, 2011, the Court granted in part, and denied in part, the Defendants' Motion to Dismiss the Complaint.[2] *See* Doc. 36. The Court dismissed Mr.

---

[1] Mr. Heim is not presently incarcerated.

[2] The moving defendants are: the Dauphin County Prison (DCP), Warden Dominick L. DeRose, Deputy Warden Elizabeth Nichols, Deputy Warden Leonard Carroll, the Prison Board of Inspectors (Prison Board), the Business Office and Manager Freddie McNeal. (Doc. 46, Defs.' Mot. for Summ. J.)

Heim's First, Fourth and Fourteenth Amendment claim as well as his Equal Protection claim. (*Id.*) As a result, Mr. Heim's Eighth Amendment excessive fines claim based on the implementation and enforcement of DCP's Room and Board Policy is the sole remaining claim. (*Id.*)

Currently before the Court is the Dauphin County Defendants' Motion for Summary Judgment. (Doc. 46, Defs.' Mot. for Summ. J.) Mr. Heim opposes the motion which is now ripe for disposition. For the reasons stated below, the Court will grant Defendants' motion for summary judgement.

## II. Statement of Undisputed Facts

For the purposes of Defendants' motion for summary judgment, the following facts are uncontroverted, deemed admitted, or where disputed, viewed in the light most favorable to Mr. Heim.[3]

Rebecca Venneri has held the position of Treatment Coordinator at the DCP since February 2001. (Doc. 48, Defs.' Statement of Undisputed Material Facts (DSMF), ¶ 1.) The DCP Treatment Department provides counseling, education, operation, and community connections services to approximately 1,000 inmates at any given time. (DSMF ¶ 2; *see also* Doc. 48-2, Ex. A, Venneri Aff., pp. 7-30.) The Counseling Department, one section of the DCP's Treatment Department, provides group and

---

[3] Defendants' Statement of Material Undisputed Facts (Doc. 48) properly references portions of the record supporting each factual statement. However, while Mr. Heim has submitted an opposition to Defendants' Statement of Material Facts (Doc. 53), his statement does not conform with the requirements of PA M.D. Local Rule 56.1 as it does not reference evidence in the record which supports his disagreement with Defendants' statements.

-2-

individual counseling, therapeutic community programs, and casework advocacy services. (DSMF ¶ 3.) A treatment plan is completed for each inmate at DCP to determine which groups they will be recommended to attend based on their individual needs. (*Id*.) Counseling services include, among other things, second change drug and alcohol, relapse prevention, addictive/compulsive behaviors, violence intervention, support skills, sex offenders, and domestic violence recovery. (*Id*. ¶ 4.) The Education Department, the second section of DCP's Treatment Department, provides GED/ABE, life skills, job skill, and library services to inmates. (*Id*. ¶ 5.) The third section of DCP's Treatment Department, the Operations Department, is responsible for assigning inmates to housing and classification, trusty status, outside job details, and makes parole recommendations. (*Id*. ¶ 6.) The Community Connections Section, the fourth section of the Treatment Department, provides religious programming to inmates through its two full-time chaplains, two part-time clerks and over 300 volunteers and covers all religions. (*Id*. ¶ 7.) Services offered by the DCP's Treatment Department are outlined in the jail's Inmate Hand Book. (Doc. 1-2, pp. 27-31.) The services offered by the Treatment Department, were available to Mr. Heim, and all other inmates, during the time Mr. Heim was incarcerated at the DCP. (DSMF ¶ 10.)

Based on Ms. Venneri's years of experience in correctional treatment, she notes that returning inmates require significantly more assistance with housing, job skills, and treatment for drug and alcohol addictions. (*Id.* ¶ 8.) These issues must be addressed in addition to modifying the offenders' criminal ways of thinking and equip them with living skills in order to reduce incidents of recidivism. (*Id*. ¶ 9.) Inmates that are more

likely to be recommitted have lost jobs, housing, and family support. (*Id.* ¶ 11.) Therefore, these inmates need, and benefit from, assistance with learning job skills, community resources, and housing upon release. (*Id.* ¶ 11.) Likewise, inmates failing out of drug court and mental health programs continue to need additional help in treating their addiction and/or learning life and coping skills. (*Id.* ¶ 12.) The more often an inmate enters DCP, especially without prior treatment or programming, their criminal way of thinking becomes more ingrained. (*Id.* ¶ 13.) Thus, it takes more time and effort for counselors to help them change these thought patterns. (*Id.*)

The Dauphin County Board of Prison Inspectors (Prison Board) is the governing body for the DCP and is solely responsible for the adoption and enactment of policy governing the operation of the facility such as the Fee for Room and Board Policy. (*Id.* ¶ 23.) On September 19, 1996, the Prison Board enacted and adopted the Fee for Room and Board Policy. (*Id.* ¶ 24; Doc. 48-4, pp. 6-15.) Prior to the Prison Board adopting the policy, it was reviewed and slightly revised by the Prison Board's Solicitor. (Doc. 48-4, pp. 13-14.) Neither Warden DeRose, Deputy Warden Elizabeth Nichols, Deputy Warden Leonard Carroll, the Business Office, nor Business Manager Freddie McNeal were members of the Prison Board in September 1996. (DSMF ¶ 24; Doc. 48-4, pp. 6-15.) These individuals were not responsible for the adoption or enactment of the policy. (DSMF ¶ 25.) Their role has been liited to administering the policy. (*Id.*) Defendants submit a signed copy of the Fee for Room and Board Policy. (Doc. 48-4, pp. 17-19.) The policy is also found in the DCP Inmate Handbook which is normally issued to inmates upon their admission to the prison. (Doc. 1-2, pp. 38-39; Doc. 59-2,

p. 2.) Mr. Heim confirms that to his knowledge the Room and Board Policy was applied to each inmate committed to the DCP. (Doc. 59-2, p. 2.)

The Fee for Room and Board Policy states that inmates sentenced to the DCP are responsible for reimbursing the DCP for room and board costs. (Doc. 48-2, p. 17.) Inmates committed and sentenced to the DCP for the first time after the implementation of the policy are responsible for paying $10.00 per day for room and board. (*Id.*, p. 18.) Individuals who are recommitted, or receive new sentences to be served at the DCP, "will be responsible for paying a per diem which is increased by five dollars [$5.00] for each commitment period after the first commitment after implementation of this program." (*Id.*) "The total per diem rate will not exceed the average cost per day to house an inmate at the Dauphin County prison [based on the previous years average cost].[4] (*Id.*) Within thirty (30) days of discharge from the DCP, the unpaid balance of the inmate's room and board fees is due. (*Id.*) If an inmate does not establish a payment plan with the prison, the invoice is turned over to a collection agency. (*Id.*) "Balances not satisfied through a collection agency will be recorded on an inmates permanent record. Should an inmate be recommitted, the inmate will be required to pay any outstanding balance on their record." (*Id.*) "Therefore, at the time of recommitment, inmates will be assessed 100% of any money in their possession" toward any unpaid balance. (Doc. 1-2, p. 39.)

DCP Counselors spend more time with individuals who have been recommitted to the DCP for the reasons previously identified. (DSMF ¶ 13.) The increased fee

---

[4] In 2010, it cost Dauphin County $97.43/day to house an inmate. (*Id.* ¶ 15.)

charged returning inmates is one way for the DCP to recover the increased expenses incurred by providing treatment services to these habitual offenders. (*Id*. ¶ 14.)

Mr. Heim disputes that he received "significantly more assistance" from the Treatment Department with housing, job skills, and treatment for drug and alcohol addictions upon his repeated commitments to DCP. He claims Defendants' premise for the increased room and board fee a ruse because "there were simply no such programs and services available at the prison" for recommitted inmates. (Doc. 53, Pl.'s Opp'n to Defs.' Statement of Material Facts (PSMF), ¶ 8.) Yet, Mr. Heim does not dispute that he did participate in numerous programs offered by the Treatment Department as early as 1993.[5] (PSMF ¶ 16; DSMF ¶ 16.) Defendants provide a list of the treatment programs Mr. Heim participated in during his various stays at the DCP. *See* Doc. 49-2, pp. 33-36; PSMF ¶ 16. Among the programs Mr. Heim participated in were: drug and alcohol education; AIDS awareness; Bible study; relapse prevention (on multiple occasions); life skills, addictive/compulsive behaviors, support skills, violence intervention, and the LASER program. (*Id*.; and DSMF ¶ 16.) Mr. Heim believes that the time he spent in the LASER program was beneficial. (DSMF ¶ 18.)

In April 2010, Mr. Heim was recommitted to the DCP as a parole violator. (Doc. 1, p. 8.) At the time of his readmission, he had a $30.00 check in his possession which was confiscated by prison officials for payment of delinquent room and board fees incurred from his previous stay(s) at the DCP. (*Id*., p. 9.)

---

[5] Based on the record before the Court, Mr. Heim received Treatment Evaluations in 1993; 1998; 1999 (x3); 2001; 2002; 2007; 2008; and 2010 (x2). On each occasion specific programming recommendations were made for him including enrollment in a relapse prevention therapeutic community, support skills, and addictive/compulsive behavior programs. *See* Doc. 48-2, pp. 33-35.

## III. Standard of Review

Under Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)); *see also* Fed. R. Civ. P. 56(c)(1)(A). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions

made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at 2514. "The non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 - 232 (3d Cir. 2001). Allegations made without evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). "Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002). Hearsay testimony contained in affidavits or statements that would be inadmissible at trial may not be included in an affidavit to oppose summary judgment. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Comp.*, 998 F.2d 1224, 1234 n. 9 (3d Cir. 1993).

"[T]o prevail on a motion for summary judgment, 'the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant].'" *Burton v. Teleflex Inc.,* 707 F.3d 417, 525 (3d Cir. 2013)(quoting *Jakimas v. Hoffmann-La Roche, Inc.,* 485 F.3d 770, 777 (3d Cir. 2007)(internal quotations omitted)). "The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Likewise,

-8-

arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

Finally, in deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct at 2511.

## IV. Discussion

### A. Municipal Liability

A municipality may be liable under § 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 2056, 56 L.Ed.2d 611 (1978). Local governments are only responsible for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (citing *Monell*, 436 U.S. at 665-683, 98 S.Ct. at 2022-2032). They are not vicariously liable under § 1983 for the actions of their employees. See *id.*, at 691; *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1387-88, 137 L.Ed.2d 626 (1997) (collecting cases). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S at 694, 98 S.Ct. at 2038; *see also Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007).

To state a § 1983 claim against a municipality, the complaint "must identify a custom or policy, and specify what exactly that custom or policy was," *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009), and specify facts showing a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007) (quoting Canton, 489 U.S. at 385, 109 S.Ct. at 1203). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policy making officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, ___ U.S. ___, ___, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011)(citations omitted). These are the "action[s] for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 480, 106 S.Ct. at 1298.

### B. DCP's Room and Board Fee Does Not Violate Mr. Heim's Eighth Amendment Rights.

Mr. Heim alleges that the Prison Board's policy of charging inmates recommitted to the DCP a different per diem room and board rates than those initially committed to the prison violates his Eighth Amendment rights.

The Eighth Amendment states that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amen. VIII; *see also Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417 n.7 (3d

Cir. 2000). The prohibition on excessive fines "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314 (1998)(citing *Austin v. United States*, 509 U.S. 602, 609-610, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488 (1993)). Although the Third Circuit Court of Appeals has not squarely addressed the constitutionality of the DCP's Room and Board Policy, it has considered the "pay-to-stay" issue before and has consistently held that such fees are not punishment but are rather "designed to teach financial responsibility." *Tillman*, 221 F.3d at 420. Additionally," the Court held that the "fees can hardly be called fines when they merely represent partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." (*Id.*) Accordingly, the fee charged violates the Eighth Amendment if it constitutes a "fine" and the fine is "excessive." (*Id.*) The Third Circuit Court of Appeals has held that as the provision of a humane environment, adequate food, clothing and shelter, medical care, and reasonable measures to guarantee an inmate's safety were not contingent on an inmate's ability to pay for these services, it was permissible for prison authorities to "seek reimbursement from the party receiving the benefit of [this] care." *Id.* at 418-419; *see also Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3d Cir. 1997).

It is undisputed that in 1996, as part of its Fees for Service/Fiscal Responsibility program, the Prison Board enacted a Room and Board policy charging DCP inmates for Room & Board and other services. First time commitments are charged the basic rate of $10 per day. The basic rate increases by $5.00 each time the inmate is recommitted

to the DCP. Per policy, this fee is not permitted to exceed the average cost per day to house an inmate at the prison. In 2010, it cost DCP $97.43 per day to house an inmate. The Room and Board policy is set forth in the DCP Inmate Handbook. Mr. Heim does not dispute he "normally" received a copy of the DCP's inmate handbook when he was admitted to the prison or that the "overall policy" was applied to every inmate committed to the DCP. *See* Doc. 59-2, p. 2, Portion of Mr. Heim's Depo.

Mr. Heim takes issue with the progressive room and board fee charged him based on his multiple commitments to DCP. He alleges the increased fee constitutes an excessive fine prohibited by the Eighth Amendment. However, the DCP has presented unchallenged evidence that recidivists require more assistance with housing, job skills, and treatment for drug and alcohol addictions more than first time commitments. DCP treatment staff affirm that recidivists require additional treatment to improve their chances of successful reintegration into society without relapse into negative behaviors, habits and addictions. The undisputed facts of record show that the fees charged for additional commitments are one way of recovering the increased expenses incurred by the prison in providing these services. While Mr. Heim personally disagrees with these statements, he does not offer any evidence to dispute these facts. Instead, he argues that Defendants' own statement that all of DCP's treatment services are available to him and all other inmates alike undermines the prison's rationale for the increase per commitment fee charged. The Court disagrees.

First, it is undisputed that DCP's room and board fees are not based on the costs of each individual's inmate's utilization of the treatment programs offered by the DCP. Second, it is also undisputed that DCP receives a variety of inmates, ranging from first

time offenders to those who have violated conditions of their parole for a variety of mental health, addiction, and other reasons. While the prison must provide a variety of treatment programs to accommodate this wide range clientele, not all inmates will need the same treatment services. Treatment recommendations are made based on each inmate's individual needs. Thus, Mr. Heim's argument that the availability of all programs, to all inmates does not disturb the Defendants' underlying, undisputed, rationale for the additional per commitment costs, i.e. those individuals committed to DCP repeatedly need more treatment services based on their declining familial support and more ingrained likelihood to partake in negative behaviors which is evidenced by their reincarceration. Finally, the Court notes that Mr. Heim was never penalized due to his unpaid room and board fees. Mr. Heim confirms, he was never asked to pay to participate in the various treatment programs he took part in while at DCP or that he was excluded from participating in a program because he had an unpaid room and board fee balance.

Accordingly, based on the undisputed record when viewed in the light most favorable to Mr. Heim, he has not demonstrated that the Prison Board's Room and Board Policy, which charges an increases fee based on the offender's number of commitments to the DCP, is unreasonable, punitive, or exceeds the average per diem cost the DCP pays to house an inmate. Under the factual scenario presented in this case, the fees imposed pursuant to the DCP's Room and Board fee are "nonpunitive and related to the legitimate purpose of partially reimbursing" the DCP for housing and treatment services for the inmates they are entrusted to house. *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012)(pre-trial detainee's challenge to room and board fees did not violate inmate's constitutional rights).

-13-

**C. Lack of Personal Involvement of Warden DeRose, Deputy Warden Nichols, Deputy Warden Carroll, Business Manager McNeal and the Business Office.**

To establish a § 1983 claim, a plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *Galena v. Leone,* 638 F.3d 186, 197 (3d Cir. 2011). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. "Because vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. Participation in after-the-fact review of a grievance or appeal is not enough to establish personal involvement. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)(finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Mincy v. Chmielsewski*, Civ. No. 12-1996, 2013 WL 49765, at *4 (3d Cir. Jan. 4, 2013)(An "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008)("The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.") Indeed, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them." *Jetter v. Beard*, 183 F. App'x 178, 181 (3d Cir. 2006) (quoting, *Rode*, 845 F.2d at 1207.)

A supervisor may also "be liable if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate[,] and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011). However, at a minimum, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

Mr. Heim seeks to impose liability on Warden DeRose, Deputy Warden Nichols, Deputy Warden Carroll, and Business Manager McNeal for perceived violations of his Eighth Amendment rights due to their role in administration of DCP's Room and Board policy. Initially, it is noted that the DCP Room and Board Policy did not violate Mr. Heim's Eighth Amendment rights. Nonetheless, the record before the Court demonstrates that none of the individual defendants served on the Prison Board which held the exclusive authority to enact the Room and Board policy. The policy was reviewed by the Prison Board's solicitor before it was passed by the Prison Board. The individuals defendants are solely responsible for the administration of the policy, not its enactment. Mr. Heim has not demonstrated the individual defendants had any reason to suspect this policy, or their administration of the policy under these circumstances, created an unreasonable risk of injury to him. Thus, he has not demonstrated their known tolerance or acquiescence to an unconstitutional policy or practice.

**V. Conclusion**

The summary judgment record raises no genuine issue of material fact that the following individuals and entities are liable under § 1983 for violating Mr. Heim's Eighth Amendment rights by implementing or administering DCP's Room and Board policy: the Dauphin County Prison; the Prison Board of Inspectors; Warden DeRose, Deputy Warden Nichols, Deputy Warden Carroll, Business Manager McNeal and the Business Office. Accordingly, Defendants are entitled to summary judgment in their favor.

An appropriate Order follows.

                                        **/s/ A. Richard Caputo**
                                        **A. RICHARD CAPUTO**
                                        **United States District Judge**

**Date: May 1, 2013**